FILED
2014 Sep-17  PM 04:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ARTELETTE COLE and ANTHONY BROWN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) CASE NO.: 2:14-cv-01737-VEH |
| v. | ) |
| | ) |
| CITY OF TARRANT, ANGELA MOON, LOXCIL TUCK, DENNIS RENO, LAURA HORTON, BETTY MIDDLEBROOKS, CATHY ANDERSON, DEBORAH MATHEWS, and JOHN T. BRYANT, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COMES NOW defendants, Loxcil Tuck, Dennis Reno, Laura Horton, Betty Middlebrooks, Cathy Anderson, Deborah Matthews, John T. Bryant, by and through their undersigned counsel of record, and pursuant to Rule 12(b)(6) and submit this Brief in Support of its Motion to Dismiss the plaintiffs' Complaint (Doc. 1, Exhibit 1(d)). Based on the arguments contained herein, the plaintiffs' Complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................... i

SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS ................... 4

ARGUMENT .........................................................................8

I.    THE COMPLAINT FAILS TO ALLEGE ANY FACTS THAT
SHOW THAT MAYOR TUCK, THE CITY COUNCIL
DEFENDANTS AND CHIEF RENO WERE PERSONALLY
INVOLVED IN THE ACTS OR OMISSIONS THAT
RESULTED IN THE PLAINTIFFS' ALLEGED
CONSTITUTIONAL DEPRIVATIONS, THEREFORE THE
PLAINTIFFS FAIL TO ESTABLISH §1983 CLAIMS
AGAINST THEM FOR UNLAWFUL ARREST, MALICIOUS
PROSECUTION, EXCESSIVE FORCE AND DELIBERATE
INDIFFERENCE....................................................................8

II.    THE COMPLAINT FAILS TO ALLEGE ANY FACTS THAT
SHOW THAT MAYOR TUCK, THE CITY COUNCIL
DEFENDANTS AND CHIEF RENO HAD SUFFICIENT
NOTICE OR AUTHORITY TO CORRECT THE ACTS OR
OMISSIONS THAT RESULTED IN THE PLAINTIFFS'
ALLEGED CONSTITUTIONAL DEPRIVATIONS,
THEREFORE THE PLAINTIFFS FAIL TO ESTABLISH
§1983 CLAIMS AGAINST THEM FOR UNLAWFUL
ARREST, MALICIOUS PROSECUTION, EXCESSIVE
FORCE AND DELIBERATE INDIFFERENCE ............................. 10

III.    THE § 1983 CLAIMS AGAINST MAYOR TUCK, THE
CITY COUNCIL DEFENDANTS AND CHIEF RENO ARE
BARRED BY QUALIFIED IMMUNITY ........................................ 15

    A.    The Defendants were acting within the scope of their
discretionary authority ............................................................16

    B.    The Defendants did not violate the Plaintiffs' clearly
established constitutional rights.................................................18

IV.   THE PLAINTIFFS FAIL TO PLEAD FACTS TO STATE
      PLAUSIBLE STATE LAW CLAIMS AGAINST THE
      INDIVIDUAL DEFENDANTS ..........................................................20

V.    THE NEGLIGENT/WANTON TRAINING, SUPERVISION
      AND RETENTION CLAIMS ARE DUE TO BE DISMISSED........23

VI.   EVEN IF THE PLAINTIFFS PLEAD PLAUSIBLE STATE
      LAW CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS,
      THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
      STATE AGENT IMMUNITY. ............................................................24

VII.  THE OUTRAGE CLAIMS ARE DUE TO BE DISMISSED............27

VIII. THE FEDERAL AND STATE MALICIOUS PROSECUTION
      CLAIMS ARE DUE TO BE DISMISSED .........................................29

IX.   THE PLAINTIFFS' CIVIL CONSPIIRACY CLAIMS ARE DUE
      TO BE DISMISSED .........................................................................30

      A.    Federal Conspiracy Claim.........................................................31

      B.    State Law Conspiracy Claim ....................................................35

X.    ADOPTION OF ARGUMENTS .......................................................36

CONCLUSION ......................................................................................37

CERTIFICATE OF SERVICE ..............................................................38

## SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS[1]

The plaintiffs allege the following: Prior to the summer of 2013, Magistrate Moon was a Tarrant employee who was responsible for receiving and accounting for citizens' payments for fines and fees to Tarrant that were assessed by the Tarrant Municipal Court for traffic citations and criminal charges. (Complaint, ¶ 12). Magistrate Moon did not properly record and account for the plaintiffs' and other citizens' payments of fines and fees over a period of years resulting in the plaintiffs and other citizens being subject to additional criminal charges and traffic citations. *Id*. at ¶ 13. Further, Magistrate Moon's actions caused the municipal court records to be inaccurate and not reflect fine and fee payments made by the plaintiffs and others. *Id*. Because the municipal court records were inaccurate, arrest warrants were issued for the plaintiffs and others who had previously paid all fines and fees owed. *Id*.

In the second or third quarter of 2013, the defendants, including Mayor Tuck, Chief Reno and the Councilmembers, became aware of Magistrate Moon not properly recording and accounting the plaintiffs' and other citizens' fine and fee payments and that the improper recording and accounting had existed for a substantial period of time. *Id*. at ¶ 14. Thereafter Mayor Tuck, Chief Reno and the

---

[1] By reciting the factual allegations alleged by the plaintiffs in the Complaint, the defendants are in no way agreeing to the truth of the facts alleged and expressly reserve the right to dispute and contest any and all facts alleged by the plaintiffs.

Councilmembers conspired to allow Magistrate Moon to quietly retire and did not disclose Magistrate Moon's accounting error to others. *Id*. These same defendants also did not review court records or take other actions to ensure that the plaintiffs' and other citizens' payments were properly accounted for or that the plaintiffs and other citizens were not subject to warrants being issued or being arrested. *Id*.

Plaintiff Cole claims that on some date in 2012 she paid Magistrate Moon the full amount of a fine for a disputed citation the City issued to Cole for having an automobile illegally parked in her yard. *Id*. at 15.  Twelve months after Cole paid the fine, Cole alleges that Tarrant police officers came to Cole's residence, knocked on the door and arrested her in front of her husband and children after she answered the door. *Id*.  Specifically Cole alleges that when the Tarrant police officers arrested her "she was physically grabbed and roughly maneuvered out onto her porch and then against the wall the wall [sic] of her home with her hands forced behind her back where she was then handcuffed." *Id*. The Tarrant police officers were allegedly "rude and obnoxious," "physically abusive" and "roughly placed" her into a squad car, in front her family and the public, "with hands cuffed behind her back…" *Id*. Cole was taken to the Tarrant jail, processed and placed in a cell. Cole alleges that she "was caused to suffer physical injuries as a result of the handcuffing and physically rough treatment as she was taken into custody," as well

as mental anguish, and that she "continues to suffer from these effects and will suffer them in the future." *Id.*

Plaintiff Brown alleges that in 2012 he was issued a traffic citation for failure to provide proof on automobile insurance, but failed to appear in court on the date indicated on the citation. (Complaint, ¶ 16). The day after his court date, Brown went to the Tarrant Municipal Court and informed Magistrate Moon that he mistakenly missed his court date and asked Moon what he should do. *Id.* Magistrate Moon told Brown that "if he immediately paid a fine/fee of $500.00 and show[ed] proof of his automobile insurance, that he would be free to go, the citation would be absolved, and that he would not have to appear in court again." *Id.* Brown paid Magistrate Moon the $500.00 and showed her proof of his insurance, but Moon failed to properly account for Brown's payment and Tarrant court records continued to show that Brown had failed to appear in court as ordered. *Id.*

As a result, the Tarrant Municipal Court issued a warrant for Brown's arrest. *Id.* On May 12, 2013, Brown was waived through a police roadblock in Tarrant, but one block later was forced off the road by a Tarrant police car. *Id.* The Tarrant police officer who stopped Brown ordered him to exit his vehicle and Brown complied. When Brown asked why he had been stopped, the police officer cursed Brown, pointed a taser at Brown, and "roughly handcuffed" Brown prior to

transporting him to jail. *Id*. Brown alleges that he "suffered physical injury as a result of rough treatment and handcuffing," as well as mental anguish and that he "continues to suffer from these effects and will suffer them in the future." *Id*. Brown was photographed and processed into the Tarrant jail, where he spent the night. Brown was released the next morning and forced to pay $175.00 to the City recover his vehicle which was impounded in the City lot during his arrest. Brown was later informed by neighbors that his "mug shot" photograph was published in a magazine and seen in local convenience stores. *Id*.

Based on these alleged events, the plaintiffs purport to state the following claims against these defendants:

1.     In **count one**[2], state law negligence and wantonness negligent and/or wanton supervision, training and retention claims and a federal § 1983 deliberate indifference claim based on the individual defendants' (except Moon) failure to supervise, train and/or retain Magistrate Moon such that Cole and Brown were not subject to arrest warrants and detention as a result of Moon's errors. (Count One, ¶¶ 17-24 ).

2.     In **count two**, state law claim for outrage against all defendants. (Count Two, ¶¶ 25-27).

---

2  In counts one through five, the plaintiffs incorporate by reference all of the preceding paragraphs. (See Complaint, ¶¶ 17, 25, 28, 31 and 36).

3.     In **count three**, state and federal claims for malicious prosecution. (Complaint, ¶¶ 28-29).

4.     In **count four**, state and federal claims for unlawful arrest and a § 1983 excessive force claim. (Complaint, ¶¶ 31-33).

## ARGUMENT

I.     **The Complaint fails to allege any facts that show that Mayor Tuck, the City Council defendants and Chief Reno were personally involved in the acts or omissions that resulted in the plaintiffs' alleged constitutional deprivations, therefore the plaintiffs fail to establish §1983 claims against them for unlawful arrest, malicious prosecution, excessive force and deliberate indifference.**

One way for the plaintiffs to state a claim against these defendants[3] in their individual capacities, is to show that they were *personally involved* in the acts or omissions that resulted in the plaintiffs' alleged constitutional deprivations. *See e.g.*, *Lloyd v. Tassell*, 318 Fed. Appx. 755, 760 (11th Cir. 2009) (citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). *See also Bender v. Baylor*, 2012 U.S. Dist. LEXIS 70728, *17 (M.D. Ala. 2012); *Dupree v. City of Phenix City*, 2011 U.S. Dist. LEXIS 150092, *7 (M.D. Ala. 2011) (adopted at 2011 U.S. Dist. LEXIS 148465). "[S]upervisory officials are not liable under §1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cotton v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)

---

3  Defendants Tuck, Reno**,** Horton, Middlebrooks, Anderson, Matthews and Bryant will sometimes be collectively referred to as "these defendants" in this Brief.

(quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). *"[P]ersonal involvement* of defendants in alleged constitutional deprivation is a prerequisite to an award of damages under §1983." *Fisher v. City of Montgomery*, 2011 U.S. Dist. LEXIS 16225, *25 (N.D. Ala. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (emphasis added).

A cursory reading of the plaintiffs' Complaint shows that it fails to allege any <u>facts</u> that show Mayor Tuck, the City Council defendants or Chief Reno were personally involved in any of the plaintiffs' alleged constitutional deprivations. There are no facts that show that any of these defendants were personally involved in issuing any warrants for the arrest of the plaintiffs, arresting the plaintiffs, using any allegedly excessive force against the plaintiffs during their arrests, or detaining them. As a result, all of these § 1983 claims against Mayor Tuck, the Council members and Chief Reno are due to be dismissed. *See Dupree*, *supra* (recognizing that a motion to dismiss is due to be granted when the plaintiff has failed to allege <u>facts</u> that connect or involve individual defendants with the claimed constitutional deprivations).

To avoid the dismissal of their §1983 claims the plaintiffs are expected to argue that the allegations in paragraphs 13-14 contain sufficient allegations of these defendants' personal involvement in their alleged constitutional deprivations; however those allegations are insufficient to save their claims. While the plaintiffs

generally allege that sometime in the second or third quarter of 2013 these defendants became aware of Magistrate Moon's errors in recording the plaintiffs' and other citizens' fine payments, they do not allege facts showing that these defendants knew that warrants were issued for the plaintiffs' arrests; that these defendants had any personal involvement in the issuance of the arrest warrants; or they were personally involved in the plaintiffs' arrests. (Complaint, ¶¶ 13-14). As a result, the Complaint fails to plausibly establish any § 1983 claim against these defendants for unlawful arrest/detention, malicious prosecution, excessive force or any other claims based on their personal involvement. Therefore, these claims are due to be dismissed for failure to state a claim.

## II. The Complaint fails to allege any facts that show that Mayor Tuck, the City Council defendants and Chief Reno had sufficient notice or authority to correct the acts or omissions that resulted in the plaintiffs' alleged constitutional deprivations, therefore the plaintiffs fail to establish §1983 claims against them for unlawful arrest, malicious prosecution, excessive force and deliberate indifference.

The § 1983 claims in the Complaint are due to be dismissed because the plaintiffs fail to allege sufficient facts to show that Mayor Tuck, the Council members and Chief Reno were Magistrate Moon's supervisors or that these defendants had the authority to correct Moon's alleged errors or that they had sufficient notice of Magistrate Moon's alleged errors in recording the plaintiffs' and other citizens' fine payments, therefore the § 1983 claims are due to be

dismissed. "The Eleventh Circuit has recognized that supervisors can be held individually liable for the constitutional violations of their employees if they had notice of the misconduct and failed to take remedial action." *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1235 (N.D. Ala. 2012) (citing *Greason v. Kemp*, 891 F.2d 829, 838 (11th Cir. 1990). "'[S]upervisors are liable under [section] 1983 "…when there is a causal connection between actions of the supervising official and the alleged constitutional violation.""' *Myers v. Bowman*, 713 F.3d 1319, 1328-1329 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "But a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right." *Id*.  (citing *Case v. Eslinger*, 555 F.3d 1317, 1328   (11th Cir. 2009)).

None of these defendants were Magistrate Moon's supervisor because she was under the supervision of the Alabama Supreme Court and/or the municipal court judge. In *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216 (N.D. Ala. 2012), Judge Coogler correctly stated the following regarding a magistrate's position within a municipal government:

> Alabama Code § 12-14-51(a) provides that "magistrates shall be considered the chief officers of the municipal court administrative agency." Magistrates are expressly delegated the authority to issue arrest warrants. §12-14-51(c)(1)… Therefore, the Court must examine whether [a municipality], under Alabama law, has control over the

> magistrates and their issuance of arrest warrants. *Id*. at 1331-32.
> Under Alabama law, the municipal court administrative agency is
> under the supervision of the municipal court, and the magistrates are
> designated by the municipal court judges. *Id*. § 12-14-50. While a
> municipality appoints and pays municipal judges, the jurisdiction and
> authority of municipal judges is generally established by state law. *Id*.
> § 12-14-1. The municipal court is required to submit monthly reports
> to the State's Chief Examiner of Public Accounts. *Id*. 12-1-19. If local
> legislation is introduced that affects the judiciary in any way, the
> municipality must deliver a copy of the bill to the State's
> Administrative Director of Courts, as well as the House and Senate
> Judiciary Committees, Clerk of the House of Representatives, and the
> Secretary of the State Senate. *Id*. § 12-1-6. The Alabama Supreme
> Court, not the municipality, provides the rules for administration of
> the municipal court administrative agency. *Id*. 12-14-52. In short,
> there is nothing to indicate that [a municipality] has control of a
> magistrate's issuance of an arrest warrant.

*Id*. at 1232. Additionally, Alabama Code § 12-14-51 "Magistrates," states the

following:

> a) The **magistrates** shall be considered the chief officers of the
> municipal court administrative agency.
> b) The Supreme Court may, by rule, prescribe procedures for the
> appointment of **magistrates** by class or position and, in addition
> thereto, provide for the appointment of other **magistrates** by the
> Administrative Director of Courts, upon recommendation by
> municipal judges.
> (c) The powers of a **magistrate** shall be limited to the following:
>> **(1) Issuance of arrest warrants.**
> **…**
>
>> (4) **Accountability to the municipal court for all uniform
>> traffic tickets and complaints issued**, including all electronic
>> traffic tickets (e-tickets), as defined in *Section 32-1-4*, in

> instances in which the court has, in its discretion, determined to
> use e-tickets, **and for all moneys received and records of
> offenses.**

Ala. Code § 12-14-51 (1975) (emphasis added). § 12-14-51 shows that the magistrate, who is under the supervision of the Alabama Supreme Court and/or municipal court judge -not the city- is responsible for the issuance of warrants and accounting for all moneys received and records of offenses. *Id*. In *Woodard*, the plaintiffs, Chief Woodard, Councilman Smith and Officer Phillips, attempted to state § 1983 First Amendment retaliation claims against the Town of Oakman ("Oakman"), Mayor Todd, Magistrate Welch, and Wilson, a private citizen, based on their involvement in Welch's issuance of warrants for the plaintiffs' arrests and the plaintiffs' actual arrests. *Id*. at 1225-26. Woodard, Smith and Phillips asserted § 1983 claims, *inter alia*, for First Amendment retaliation, Fourth Amendment unlawful arrest and malicious prosecution, and Fourteenth Amendment deliberate indifference because the warrants for their arrests were based on "sham complaints." *Id*. at 1232-33. Mayor Todd ("Todd"), Magistrate Welch ("Welch") and Wilson all moved to dismiss the complaint for failure to state a claim.

The court dismissed Woodard's malicious prosecution claim against Todd because there were no facts against Todd showing her involvement in the allegedly malicious prosecution. *Id*. at 1233. The court denied Todd and Smith's motion dismiss Phillips' malicious prosecution claim based on facts that Todd directed

Smith to sign a sham complaint. *Id*. at 1234.  The court dismissed the § 1983 deliberate indifference claims against Todd and Welch for "fail[ing] to take any remedial action", holding: "The individual Defendants [Todd, Welch and Wilson] …did not supervise each other, and there are no facts alleged that would allow a reasonable jury to infer that any of the Defendants had <u>sufficient notice</u> or <u>authority to effect remedial action</u> to sustain a claim for 'deliberate indifference' under the Fourteenth Amendment." *Id*. at 1235. As a result, the court dismissed the deliberate indifference claims. *Id*.

As in *Woodard*, none of these defendants were Magistrate Moon's supervisors nor did they have authority over Moon because she was under the control and direction of the Alabama Supreme Court and/or the Tarrant Municipal Court judge. *See* Ala. Code §§ 12-2-19; 12-2-30; 12-14-50. Specifically, neither Mayor Tuck nor Chief Reno nor the Council members were supervisors of Magistrate Moon because Moon was under the supervision of the municipal court. *Id*. at § 12-14-50. It is axiomatic that if these defendants are not the supervisors of Magistrate Moon, they cannot have § 1983 supervisory liability for failing to correct her alleged errors. Furthermore, the plaintiffs' conclusory allegations  that these defendants "were made aware" of Magistrate Moon's alleged actions are insufficient to show that these defendants had notice that Moon was allegedly improperly accounting for payments or that such was likely to result in the

plaintiffs being arrested. (*See* Complaint; ¶ 14). The plaintiffs also fail to provide the required factual detail, as opposed to unsupported conclusions, as to how these defendants were allegedly "made aware" of Moon's alleged errors. *Id.*

Additionally, and unlike the defendants in *Woodard*, there are no facts alleged to show that these defendants personally committed an underlying violation of the plaintiffs' constitutional rights. Specifically none of these defendants sought warrants for the plaintiff's arrest; arrested the plaintiffs; or prosecuted the plaintiffs. (Complaint, ¶ 14). Because the plaintiffs fail to plead facts plausibly establishing that Mayor Tuck, the Council members and Chief Reno were Magistrate Moon's supervisors or that they had the authority to correct her alleged errors or that they had sufficient notice of Moon's alleged errors or that they personally committed some underlying violation of the plaintiff's constitutional rights, all of the plaintiffs' § 1983 claims are due to be dismissed.

**III.    The § 1983 Claims against Mayor Tuck, the City Council defendants and Chief Reno are barred by qualified immunity.**

The following is the framework for determining whether governmental officers, like these defendants, are entitled to qualified immunity:

> Qualified immunity protects government officers sued in their individual capacities from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The purpose of this immunity is to allow

government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). The inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (internal quotation marks omitted); *see Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful" (internal quotation marks omitted). To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted). In making this determination, instead of focusing on whether the acts in question involved the exercise of actual discretion, a court should assess whether they are of a type that fell within the employee's job responsibilities. *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). A court should ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize …." *Id*.

*Bash v. Patrick*, 608 F. Supp. 2d 1285, 1292-1293 (M.D. Ala. 2009). A court should not be "overly narrow" in interpreting the term "discretionary authority." *Jordan v. Doe*, 38 F.2d 1559, 1566 (11th Cir. 1994).

###   A.   The defendants were acting within the scope of their discretionary authority.

Mayor Tuck, the Council members and Chief Reno were all acting within the scope of their discretionary authority during the events alleged in the Complaint, according to the plaintiffs' allegations. (*See* Complaint, ¶¶ 5-7 ( *e.g.*

"At all times pertinent hereto Mayor Tuck is mayor…" )). Furthermore, Mayor Tuck, the Council members and Chief Reno purportedly receiving information about the operations of the Tarrant Municipal Court and its officers, is a legitimate job-related function, even though these defendants had no authority over the operations of the court or its officers.  Thus, these defendants have shown that they were acting within scope of their discretionary authority.

These defendants also note; however, that the plaintiffs impermissibly lump all of them together instead of specifically identifying the actions of each individual that allegedly violated their constitutional rights. *See Shelton v. St. Petersburg Police Dep't*, 2010 U.S. Dist. LEXIS 20122, *13-14 (M.D. Fla. Feb. 4, 2010) ("Where there are claims against government actors in their individual capacities and qualified immunity may be available to those defendants, the Plaintiff is required to *specifically identify the actions taken by each such individual defendant* that resulted in the alleged violation of his constitutional rights.") (quoting *Harris v. District Bd. Of Trustees of Polk Comm.*, 981 F. Supp. 1459, 1462 (M.D. Fla. 1997)). Thus, if these defendants have not been able to establish that they were acting within their discretionary authority, the plaintiffs have prevented them from doing so by failing to properly state what individual actions each defendant allegedly took. The failure to state that alleged actions of the individual defendants is in essence an impermissible "shotgun pleading" and

the Complaint should dismissed for that reason alone. "Shotgun" pleading has been strongly condemned by the Eleventh Circuit, particularly with regard to complaints, like the plaintiffs' Complaint, which groups a myriad of defendants together for multiple claims without distinguishing what facts support the claims against the various defendants. *See Cramer v. State of Florida*, 117 F.3d 1258, 1261, 1263 (11th Cir. 1997) ("...[s]hotgun complaints of the sort filed in these cases are altogether unacceptable...[;] shotgun pleadings, whether filed by plaintiffs or defendants, exact and intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources.); *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F. 3d 1273, 1279 (11th Cir. 2006); *Ebrahimi v. City of Huntsville Bd. of Edu.*, 114 So.3d 162, 165 (11th Cir. 1997).

## B. The defendants did not violate the plaintiffs' clearly established constitutional rights.

Because these defendants have met their initial burden to establish their entitlement to qualified immunity, the burden is on the plaintiffs to show the following:

> The burden then shifts to the plaintiff to show (1) that the conduct violated a constitutional right, and (2) that the right was clearly established at the time of the defendant's alleged misconduct. *Humphrey*, 482 F.3d at 846 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). A right is 'clearly established' if "no reasonably competent officer would have taken the same action." *Id*. at 847 (emphasis in original). Further, where the

alleged violation involves a mistake by an official, "qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)...

*Boozer v. Sarria*, 2010 U.S. Dist. LEXIS 106820, *12-13 (N.D. Ga. 2010) (citation omitted). "The Supreme Court has stated that [the district court or the court of appeals] have discretion in deciding which of those two prongs to address first." *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (citing *Pearson*, 555 U.S. at 236). Furthermore:

> The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). The right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). "We have said many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (quotations omitted). In determining whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, of this Court, and of the relevant state's highest court. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

*Id*. Under *Twombly* and *Iqbal*, the plaintiffs are required to plead facts that plausibly establish that these defendants violated their constitutional rights. These defendants submit that the plaintiffs have failed to plead sufficient facts to show that any of them violated the plaintiffs' constitutional rights, under the Fourth

Amendment, by allegedly failing to take actions to remediate Magistrate Moon's alleged errors in the operations of the municipal court because, as previously argued, these defendants had no authority over the municipal court or Moon for the accounting of fines or the issuance of warrants as a matter of law. *See* Ala. Code §§ 12-14-51 (1975); *Woodard*, 885 F. Supp. 2d at 1232. Furthermore there are no allegations that any of these defendants had any involvement in the plaintiffs' arrests or the force used in those arrests. Because the plaintiffs fail to plead facts showing that these defendants violated their constitutional rights or that those rights were clearly established at the time of the events alleged in the Complaint, Mayor Tuck, the Council members and Chief Reno are entitled to qualified immunity and the plaintiffs § 1983 claims are due to be dismissed.

### IV.   The Plaintiffs Fail To Plead Facts To State Plausible State Law Claims Against The Individual Defendants.

The plaintiffs' state law claims against these defendants for negligence and/or wantonness[4], negligent training, supervision and retention of Magistrate Moon, malicious prosecution and unlawful arrest and detention are due to be dismissed because the plaintiffs fail to plead *Twombly* sufficient facts to state these claims.  As discussed with regard to the plaintiff's purported § 1983 claims, the plaintiffs fail to allege sufficient facts to show that these defendants personally

---

4  These defendants submit that the purported claims against them are only for negligent and/or wanton training, supervision and retention of Magistrate Moon, but reference the general negligence and wantonness claims out of an abundance of caution. (*See* Complaint, ¶¶ 19-23).

committed any of the state law torts alleged. The only <u>facts</u> regarding Mayor Tuck, the Council members and Chief Reno are that they were <u>collectively</u> made aware of Magistrate Moon not properly accounting for fine and fee payments; that they allowed Moon to quietly retire without disclosing her accounting errors; and they did not take action to correct Moon's errors so that arrest warrants would not be issued for citizens who had paid their fines and fees. (Complaint, ¶ 14).  There are no factual allegations showing that any of these defendants sought arrest warrants or instigated criminal proceedings against the plaintiffs or arrested or detained the plaintiffs. *Id*. In short, none of these defendants personally participated in any of the events that allegedly injured the plaintiffs.

Because these defendants were not personally involved in any of the events surrounding the plaintiffs' arrests, the only possible avenue of recovery against these defendants is respondeat superior or vicarious liability. However, "it is well-established that, 'as a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates.'" *Smith v. City of Sumiton*, 2013 U.S. Dist. LEXIS 2240, \*14 (N.D. Ala. Jan. 7, 2013) (Proctor, J.) (quoting *Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006)). In *Smith*, Judge Proctor dismissed the plaintiff's state law claims against Sumiton Chief of Police Burnett because Burnett was not vicariously liable for the actions of his subordinate police officer. *Id*. Likewise all of these

21

defendants are not vicariously liable for Moons' alleged actions. Furthermore, as to Mayor Tuck, Alabama law is clear that, even if she was Magistrate Moon's supervisor [which she was not], Mayor Tuck is not vicariously liable for the actions of her subordinates. *See Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1195 (M.D. Ala. 1999) ("A municipality's chief executive is not vicariously liable for the misconduct of his or her subordinates.") (quoting *Newton v. Town of Columbia*, 695 So. 2d 1213, 1218 (Ala. Civ. App. 1997) (citing *Carter v. City of Gadsden*, 264 Ala. 544, 88 So. 2d 689, 695 (1955)). In addition, Alabama law shows that none of these defendants had supervisory authority over the municipal court or Magistrate Moon for the accounting of fines or the issuance of warrants, which is the basis of all of their state law claims. *See* Ala. Code §§ 12-14-51 (1975); *Woodard*, 885 F. Supp. 2d at 1232.  Because the plaintiffs fail to plead facts to plausibly establish any state law claims against Mayor Tuck, the Council members or Chief Reno, these claims are due to be dismissed.

## V.    The Negligent/Wanton Training, Supervision And Retention Claims Are Due To Be Dismissed.

The negligent/wanton training, supervision and retention claims against these defendants are due to be dismissed because no such causes of action exist under Alabama law against municipal officers. In *Wright v. City of Ozark*, the court dismissed the negligent hiring, training and supervision claims against a mayor and police chief based on actions of Ozark's police officers finding that

"[c]ourts have routinely held that no such causes of action exist in Alabama." *Id.* at 2014 U.S. Dist. LEXIS 61257, *27-28  (M.D. Ala. May 2, 2014) (citing *Cheatham v. City of Tallassee*, No. 2:11-cv-672, 2012 U.S. Dist. LEXIS 127117, *37, 2012 WL 3890127, at *13 (M.D. Ala. Sept. 7, 2012) (finding that Alabama does not recognize a cause of action against a supervisor or municipality for negligent supervision/training/hiring); *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258-59 (M.D. Ala. 2010) (dismissing negligent training, supervision and <u>retention</u> claims against police chief); *Grider v. City of Auburn*, 628 F. Supp. 2d 1322, 1351-52 (M.D. Ala. 2009) (supervision/training/hiring); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1058 (S.D. Ala. 2007) (same); *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1310-11 (S.D. Ala. 2001) (same)); *see also Smith v. City of Sumiton*, 2013 U.S. Dist. LEXIS 2240, 15-17 (N.D. Ala. Jan. 7, 2013) (dismissing negligent training, supervision and <u>retention</u> claims against police chief). In accordance with the weight of these authorities, the negligent/wanton training, supervision and retention claims against these defendants are due to be dismissed.

### VI.   Even If The Plaintiffs Plead Plausible State Law Claims Against The Individual Defendants, The Individual Defendants Are Entitled To State Agent Immunity.

The Alabama Supreme Court has defined when a state agent, like these defendants, is entitled to immunity as follows:

> In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), a plurality of this Court articulated the following test for State-agent immunity: "A

23

State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's "(1) formulating plans, policies, or designs; or "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: "(a) making administrative adjudications;"(b) allocating resources;"(c) negotiating contracts; "(d) hiring, firing, transferring, assigning, or supervising personnel; or "(3) discharging duties imposed on a department or agency by statute, rule,  or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students. "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."*Cranman*, 792 So. 2d at 405 (emphasis on "shall" and "shall not" original; other emphasis  added). The Court adopted the Cranman test for State-agent immunity in *Ex parte Butts*, 775 So. 2d 173, 177-78 (Ala. 2000).

*Ex parte Kennedy*, 992 So. 2d 1276, 1281-1282 (Ala. 2008). In *Hollis v. City of Brighton*, 950 So.  2d. 300, 309 (Ala. 2006), the Alabama Supreme Court modified category (4) of *Cranman* as follows:

"Because the peace officers' immunity statute does not limit the availability of immunity to 'enforcement of the criminal laws,' we today modify category (4) of *Cranman* to read as follows:

> "'A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's'"...."'(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.'

*Id.* at 1282.   Thus, *Hollis* recognized the immunity afforded to law enforcement officers, like Chief Reno, is not limited to the enforcement of the criminal laws. *Hollis*, 950 So.2d at 309.

§  6-5-338(a),  Ala.  Code  1975,  which  provides  immunity  for  law-enforcement officers, states as follows:

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a) (1975); *see also Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003). The court has also established a burden shifting process when the

defense of state agent immunity is raised:

> This Court has established a burden-shifting process when a party raises the defense of State-agent immunity. In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. A State agent acts beyond authority and is therefore not immune when he or she fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.

*Ex parte Randall*, 971 So. 2d 652, 663-664 (Ala. 2007) (internal quotations, citations omitted).

Based on the facts alleged in the Complaint, all of these defendants are entitled to state agent immunity under part two of the *Cranman* analysis because they were allegedly "exercising…judgment in the administration of a department or agency of government" [i.e. the operation of Tarrant itself, as opposed to the Tarrant Municipal Court] with regard to how, or if, they had authority to address Magistrate Moon's alleged accounting errors and whether she should be allowed to retire. (Complaint, ¶14). Chief Reno would also be entitled to state agent/peace officer immunity under § 6-5-338(a), because any decisions he would have made regarding how to address Moon's alleged accounting errors from a law enforcement perspective would have required an exercise of his judgment and discretion within the scope of his law enforcement duties. Because these defendants have shown that they were engaged in actions that entitle them to state

agent immunity and, in the case of Chief Reno peace officer immunity, the burden is on the plaintiffs to show that they have alleged plausible facts, as opposed to mere conclusions, showing that these defendants violated their state or federal rights or acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Randall*, 971 So. 2d at 663-664. For the reasons previously stated herein, [including, but not limited to the fact that these defendants had no supervisory authority over Magistrate Moon or the municipal court] these defendants contend that the conclusory, shotgun allegations in paragraph 14 of the Complaint are insufficient to defeat their assertion of immunity and that the state law claims against them are due to be dismissed.

## VII.   The Outrage Claims Are Due To Be Dismissed.

The outrage claims against these defendants are due to be dismissed because the plaintiffs fail to plead facts establishing an outrage claim that is recognized under Alabama law. "[I]n order to prevail on [his] tort-of-outrage claim, [the plaintiff is] required to present substantial evidence indicating that [the defendant's] conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)). As stated by the *Penn* court:

> The Alabama Supreme Court has emphasized "that this tort [outrage] does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *American Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 364-65 (Ala. 1980) (citation omitted). Rather, recovery is appropriate for only "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 365. The court is aware of "only three limited circumstances" where the Alabama Supreme Court has recognized this tort: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment." *Carraway Methodist Health Systems v. Wise*, 986 So.2d 387, 401 (Ala. 2007).

*Penn v. Ala. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 105965, *30-31 (M.D. Ala. Sept. 19, 2011). The plaintiffs do not claim one of the three limited circumstances in which the Alabama Supreme Court has recognized the tort of outrage. Instead, the plaintiffs base their purported outrage claim on Magistrate Moon's alleged accounting errors and their arrests and prosecutions. (Complaint, ¶¶ 25-27). Courts in the Northern District have dismissed outrage claims under similar circumstances. *See Woodard*, 885 F. Supp. 2d at 1239 (dismissing outrage claim based on sham complaints resulting in allegedly unlawful arrests); *Higginbotham v. City of Pleasant Grove*, 2013 U.S. Dist. LEXIS 141566, *21-23 (N.D. Ala. Sept. 30, 2013) (dismissing outrage claim where plaintiff alleges harassment, unlawful arrest and use of force). Because the plaintiffs' allegations do not fall within one of the three accepted categories or meet the high standards required for an outrage claim, this claim is due to be dismissed.

## VIII.  The Federal And State Malicious Prosecution Claims Are Due To Be Dismissed.

The plaintiffs' federal and state law malicious prosecution claims against these defendants are due to be dismissed because the plaintiffs plead no facts to plausibly allege that the individual defendants instituted or maintained a judicial proceeding, through arrest warrants or otherwise, against them.

> In Alabama, the elements for a malicious prosecution claim are: "(1) institution or continuation of an original judicial proceeding, either civil or criminal; (2) by or at the instance of the defendant; (3) termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) injury or damage as the result of the prosecution's complaint." *Kroger Co. v. Puckett*, 351 So. 2d 582, 585 (Ala. Civ. App. 1977).

*Woodard*, 885 F. Supp. 2d at 1238. "To establish a federal malicious prosecution claim under Section 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).  In *Woodard*, the court declined to dismiss the state law malicious prosecution claims against the individual defendants [except for Woodard's claim against Todd[5], which was dismissed] because the plaintiffs

---

5 The court dismissed Woodard's claim against Todd because Todd was not alleged to have any involvement in Welch directing Wilson to sign  sham warrant complaints against Woodard. *Woodard*, 885 F. Supp. 2d at 1225, 1233. In that respect, these defendants are like Todd because there are no facts that any of them were involved in procuring the warrants for their arrests. (*See* Complaint, ¶ 14).

adequately alleged facts showing that the individual defendants intentionally directed the signing of sham complaints, issued or directed the issuance of warrants based on the sham complaints, and/or issued a warrant based solely on protected speech, which was sufficient to establish "malice." *Id.*

Conversely, in this case, the plaintiffs make no factual allegations that any of these defendants were personally involved in instituting or continuing judicial proceedings against them through arrest warrants or otherwise. (Complaint, ¶¶ 13-14).  The plaintiffs also do not allege facts showing that the individual defendants acted with malicious intent toward the plaintiffs because there are no facts showing these defendants had knowledge that warrants for the plaintiffs' arrests would be issued. *Id.*  All that the plaintiffs allege is that all of the individual defendants did not take action to correct Magistrate Moon's alleged errors, which is insufficient to state a claim. Therefore, the federal and state law malicious prosecution claims are due to be dismissed.

### IX.    The Plaintiffs' Civil Conspiracy Claims Are Due To Be Dismissed.

To the extent the plaintiffs allege a civil conspiracy[6] under federal or state law against Mayor Tuck, the Council members and Chief Reno, those claims are

---

[6] These defendants contend that if the plaintiffs allege a federal conspiracy claim, the claim is only alleged under 42 U.S.C. Section 1983, and not under Sections 1985 or 1986. The complaint contains no reference to Sections 1985 or 1986 and does not contain the requisite allegations that any of the defendants conspired to deprive the plaintiffs of equal protection of the law based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus..."Barnette v. Phenix City, 2006 U.S. Dist. LEXIS 14783 *32 (M.D. Ala. Mar. 15, 2006)(quotations, citation

due to be dismissed. The federal conspiracy claim is due to be dismissed based on the intracorporate conspiracy doctrine and because the vague allegations fail to state a claim. The state law conspiracy claim is due to be dismissed because the plaintiffs fail to plead facts showing these defendants agreed to act unlawfully in "allowing" Magistrate Moon to retire and there is no valid underlying cause of action against them. The plaintiffs allege that Mayor Tuck, the Council members and Chief Reno conspired to allow Magistrate Moon to quietly retire from her position after learning of her accounting errors in the Tarrant Municipal Court. (Complaint, § 14). The plaintiffs do not specifically allege that the individual defendants conspired to violate the plaintiffs' or other citizens' rights. (*See* Complaint, generally).

### A.    Federal Conspiracy Claim.

The federal civil conspiracy claims against these defendants are barred by the intracorporate conspiracy doctrine, which is accurately described as follows:

> Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981); *see also United States v. Hartley*, 678 F.2d 961, 970 (11th Cir.1982). The reasoning behind the

omitted)(dismissing Section 1985 and 1986 claims where complaint contained no allegations of racial or class based animus).

intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself. *See Dussouy*, 660 F.2d at 603 (explaining that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor); *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952) (stating that "[a] corporation cannot conspire with itself any more than a private individual can"). This doctrine has been applied not only to private corporations but also to public, government entities. *See Chambliss v. Foote*, 562 F.2d 1015 (5th Cir.1977), aff'g, 421 F. Supp. 12, 15 (E.D.La.1976) (applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *see also Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir.1994) (holding that intracorporate conspiracy doctrine applies not just to private entities but also to government agencies such as the Department of Children and Family Services)...

*Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000); *see also Albra v. City of Fort Lauderdale*[7], 232 Fed. Appx. 885, 891 (11th Cir. 2007) ( per curiam). In *Dickerson*, the plaintiff alleged a Section 1985(3) conspiracy claim against that Alachua County and several County jail officials claiming that they conspired to blame a prisoner escape on him and several other African-American officers, which resulted in his demotion. *Id.* at 763-764. The court found that the County defendants were entitled to judgment as a matter of law on the Section

---

[7] "Under the doctrine of intracorporate conspiracy, 'a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves' because a corporation and its employees are considered to be 'a single legal actor.'" McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000). The intracorporate conspiracy doctrine also applies to public, governmental entities. Dickerson v. Alachua County Comm'n, 200 F.3d 761, 767 (11th Cir. 2000)." Id. at 891.

1985(3) conspiracy claim, under the intracorporate conspiracy doctrine, because "the County jail and its employees are considered to constitute a single legal entity that cannot conspire with itself." *Id.* at 768, 770. In *York*, the court found that the plaintiff's Section 1985(3) conspiracy claim against Governor Riley and other state actors was due to be dismissed based on the intracorporate conspiracy doctrine. *York v. Riley*, 2010 U.S. Dist. LEXIS 80577, at *5 (M.D. Ala. 2010). Similarly, in this case, Mayor Tuck, the Council members and Chief Reno were officers and/or employees of Tarrant at the time of the incident and, as in *Dickerson*, are considered to be one legal entity, the City of Tarrant. Because these defendants and Tarrant are all considered one legal entity, and a legal entity like Tarrant cannot conspire with itself, the § 1983 conspiracy claim is due to be dismissed.

In *Grider*, the Eleventh Circuit held that the intracorporate conspiracy doctrine applied to officers accused of fabricating a bribery charge against an individual and granted summary judgment to the officers based on the doctrine. *Grider v. City of Auburn*, 618 F.3d 1240, 1262-1263 (11th Cir. 2010). The *Grider* court focused on whether it was within the scope of the officers' duties to make bribery charges against the plaintiff and found that it was. *Id.* at 1262. Because the officers were acting within the scope of their duties to prosecute the law, the intracorporate conspiracy doctrine applied. *Id.* Likewise, in this case, it is at least tangentially within duties of Mayor Tuck, the Council members and Chief Reno to

receive information about the operations of the Tarrant Municipal Court because they are city officials, although they have no supervisory authority over the Court. Because all of the individual defendants were all acting within the scope of their duties during the alleged conspiracy to let Moon quietly retire, the intracorporate conspiracy doctrine applies to the facts alleged in the Complaint. Therefore, based on *Dickerson* and *Grider*, the conspiracy claim is due to be dismissed.

The federal conspiracy claim is also due to be dismissed because it contains vague and conclusory allegations that fail to show an agreement to inflict unconstitutional injury or how any of these defendants benefit from the alleged conspiracy. To state a § 1983 conspiracy claim: "Plaintiffs must allege '1) an agreement between two or more state actors or a state actor and a private entity; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal, and causing some harm.' In addition, '[a] plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists.'" *Jennings v. City of Miami*, 2009 U.S. Dist. LEXIS 5430 *32-33 (S.D. Fla. 2009) (quoting *Hansel v. All Gone Towing, Inc.*, 132 Fed. Appx. 308, 309 (11th Cir. 2005) (per curiam)(internal citations omitted). Furthermore, "[v]ague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss." *Id.*, citing *Hansel*, 132 Fed. Appx. at 309.

Here, the plaintiffs allege that Mayor Tuck, the Council members and Chief Reno agreed to allow Magistrate Moon to quietly retire.  These defendants contend that these vague and conclusory allegations are insufficient to show that these defendants conspired amongst themselves to accomplish an unlawful purpose. First, all of the defendants are lumped together in one sentence and there are not "particularized allegations" about each defendant or the purpose of the alleged conspiracy. (Complaint, § 14). Second, there are no factual allegations showing that the defendants intended to cause the plaintiffs some constitutional rights deprivation by allowing Moon to retire. Third, there are no allegations that the defendants took some "overt" act in furtherance of the alleged conspiracy.  The plaintiffs also allege no facts as to how allowing Moon to quietly retire would benefit them in any way or shield Tarrant from liability. Therefore, because the conspiracy claim is based on conclusory allegations and there are no facts to show that these defendants conspired to violate the plaintiffs' constitutional rights, the federal conspiracy claim is due to be dismissed.

### B.      State Law Conspiracy Claim.

The state law conspiracy claim is likewise due to be dismissed because the plaintiffs fail to allege sufficient facts to state a claim. "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Keith v. Witt Auto Sales, Inc.*, 578

So.2d 1269, 1274 (Ala. 1991) (citing *Eidson v. Olin Corp.*, 527 So.2d 1283 (Ala. 1988)). "A plaintiff alleging a conspiracy must have a valid underlying cause of action." *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280, 1290 (Ala. 1993). "[A] conspiracy claim must fail if the underlying act itself would not support an action." *Triple J Cattle, Inc. v. Chambers*, 621 So.2d 1221, 1225 (Ala. 1993).   The conspiracy claim fails because there are no factual allegations establishing that these defendants combined to accomplish an unlawful end. Specifically, there are no factual allegations that these defendants allegedly allowed Magistrate Moon to retire knowing that such would result in the plaintiffs' allegedly unlawful arrests. There are also no factual allegations that these defendants in some way unlawfully allowed Magistrate Moon to retire. Also, as argued herein, there are no valid underlying causes of action against these defendants, therefore state law conspiracy claims fail for that reason as well. Therefore, the state law conspiracy claim is due to be dismissed.

## X.    Adoption Of Arguments.

These defendants adopt by reference, as if fully stated herein, the following arguments and legal authorities stated in the City of Tarrant's Brief in Support of Motion to Dismiss:

1. The argument in Section V that the plaintiffs are not entitled to equitable relief.

2. The argument in Section IV that the plaintiffs' § 1983 excessive force claim is subsumed into the unlawful arrest claim.

3. The argument in Section XIII that the plaintiffs' Complaint is due to be dismissed as a "shotgun pleading."

## XI.   Conclusion.

The Complaint is due to be dismissed because it fails to plead facts to state a plausible claim of § 1983 liability against these defendants because none of them were personally involved with the alleged events that wronged the plaintiffs nor did these defendants have supervisory authority over Magistrate Moon. These defendants are also entitled to qualified immunity form the plaintiffs' § 1983 claims. The negligent/wanton hiring, training and retention claim is due to be dismissed according to Alabama law.  These defendants are entitled to state agent and/or peace officer immunity from the state law claims. The plaintiffs fail to allege facts establishing an outrage claim. The purported conspiracy claims are due to be dismissed based on the intracorporate conspiracy doctrine and because the plaintiffs fail to plead sufficient facts for a state law conspiracy claim. Therefore, the Complaint is due to be dismissed.

Respectfully submitted,

 s/ Daniel R. Pickett_____
Daniel R. Pickett (ASB-9407-N59P)
Attorney for defendants: City of Tarrant, Loxcil
Tuck, Dennis Reno, Laura Horton, Betty
Middlebrooks, Cathy Anderson, Deborah
Matthews, John T. Bryant
**DONAHUE & ASSOCIATES, LLC**
1020 22nd Street, South
Birmingham, AL 35205
Tel:   205-871-8858
Fax:   205-879-1679
Email: dpickett@donahue-associates.com


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of September, 2014, I filed the foregoing with the U.S. District Court using the CM/ECF system which will send notification of such filing to the following:

J. Flint Liddon, Esq.
BEAR & LIDDON
1330 21st Way South, Suite 300
Birmingham, Alabama 35205
Tel: 205-933-0940
Fax: 205-933-0936

Thomas S. Hale
Jesse Cash
**HALE SIDES LLC**
600 Financial Center
505 20th Street North
Birmingham, Alabama 35203
Phone: 205-453-9800
Fax: 205-453-9801
tsides@halesides.com
jcash@halesides.com

                              s/ Daniel R. Pickett_____