FILED

2014 Nov-17  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **ARTELETTE COLE and** ) | |
| **ANTHONY BROWN,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:14-CV-1737-VEH** |
| ) | |
| **CITY OF TARRANT, ANGELA** ) | |
| **MOON, LOXCIL TUCK, DENNIS** ) | |
| **RENO, LAURA HORTON, BETTY** ) | |
| **MIDDLEBROOKS, CATHY** ) | |
| **ANDERSON, DEBORAH** ) | |
| **MATHEWS, and JOHN T.** ) | |
| **BRYANT,** ) | |
| ) | |
| **Defendants.** ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Procedural History

This case was originated by Plaintiffs Artelette Cole and Anthony D. Brown

in Jefferson County Circuit Court on July 31, 2014, against Defendants City of

Tarrant (the "COT"), Angela Moon, Loxcil Tuck, Dennis Reno, Laura Horton, Betty

Middlebrooks, Cathy Anderson, Deborah Mathews, and John T. Bryant (Doc. 1-3 at

3)[1] and was removed to this court by Defendants on September 10, 2014. (Doc. 1 at

---

[1]  All page references to Doc. 1-3 correspond with the court's CM/ECF numbering system.

1). On October 3, 2014, Plaintiffs filed a first amended complaint. (Doc. 16). As described in this amended pleading, Plaintiffs' lawsuit arises out of each one's arrest, which they contend occurred because of an alleged inaccurate and improper accounting of their payments of fees and fines attributable to prior criminal charges and/or traffic citations that were filed against them in the COT. (*See generally* Doc. 16).

The case caption of Plaintiffs' amended complaint suggests that all persons named as defendants in this action have been sued in their individual capacity (*i.e.*, using "an individual" after each person's name), and makes no reference to their official status.[2] However, in describing the individual defendants as parties within the body of their complaint, Plaintiffs refer to these parties' official roles and do not indicate in which capacity or capacities each has been sued. (*See* Doc. 16 at 2 ¶¶ 7-10 (identifying Angela Moon as a municipal court magistrate for COT, Loxcil Tuck as the mayor of COT, Dennis Reno as the chief of police for COT, and the remaining five individuals as city council members of COT)).

Plaintiffs' amended pleading contains four counts. Count One asserts violations

---

[2] A § 1983 claim against a person in her official capacity seeks to impose liability on the entity which she represents, and not on her personally. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) ("Welch's action against the Sheriff and Chief Deputy Sheriff in their official capacities imposes liability on the entity they represent, and not on them as individuals." (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985))).

of the Fourth Amendment to the United States Constitution against Defendants COT, Tuck, Reno, and the City Council Members. (Doc. 16 at 9-11 ¶¶ 78-86). Count Two claims violations of the Fifth Amendment to the United States Constitution against Defendants COT, Tuck, Reno, and the City Council Members. (*Id.* at 11-12 ¶¶ 87-93).

Count Three is for malicious prosecution under Alabama law against all defendants. (*Id.* at 12-13 ¶¶ 94-99). Finally, Count Four is a request for equitable relief brought pursuant to § 1983 against all defendants. (*Id.* at 13-15 ¶¶ 100-08).

Pending before the court are (1) the City of Tarrant's Motion To Dismiss First Amended Complaint (Doc. 20) ("COT's Motion"); (2) Defendants Cathy Anderson, John T. Bryant, Laura Horton, Deborah Mathews, Betty Middlebrooks, Loxcil Tuck's Motion To Dismiss First Amended Complaint (Doc. 22) (the "Individuals' Collective Motion"); and (3) Motion of Defendant Dennis Reno To Dismiss the Plaintiff's First Amended Complaint ("Chief Reno's Motion"), all of which were filed on October 24, 2014, and which are supported by separate briefs filed on this same date. (Docs. 21, 23, 26).

Plaintiffs have failed to file any opposition, which deadline ran on November 7, 2014, under Appendix III to the court's uniform initial order (Doc. 3) entered on September 3, 2014. (*See id.* at 23 ¶ B.2 (The opponent's responsive brief shall be

filed no later than fourteen (14) **calendar** days thereafter.") (emphasis in original)).

For the reasons explained below,  COT's Motion, the Individuals' Collective Motion, and Chief Reno's Motion are **GRANTED IN PART**, **DENIED IN PART**, and otherwise **TERMED** as **MOOT**.

## II.    Standard(s)

### A.    Rule 12(b)(1)

Unlike state courts, federal tribunals are bodies of limited jurisdiction, meaning that the grounds for the court's jurisdiction over the claims asserted by the plaintiff must be present at the time the complaint is filed and must be obvious on the face of the complaint. Fed. R. Civ. P. 8(a); 28 U.S.C. § 1330, *et seq.* The law is clear that Plaintiffs, the parties seeking to invoke federal jurisdiction in this case, have the burden to demonstrate that the court has subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135  (1936) ("They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor . . . . [and a]s he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court."); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts

supporting the existence of federal jurisdiction.").

Further, lack of subject matter jurisdiction cannot be waived or expanded by judicial interpretation, and a jurisdictional deficiency can be raised at any time by either the parties or the court. *See, e.g., Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18, 71 S. Ct. 534, 542,  95 L. Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties."); *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S. Ct. 553, 557, 42 L. Ed. 2d 532 (1975) ("While the parties may be permitted to waive nonjurisdictional defects, they may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy,' and . . . we feel obliged to address the question of mootness before reaching the merits of appellant's claim.") (citation omitted).

### B.     Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99,

103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to

an entitlement to relief." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## C.   Qualified Immunity

All individual defendants assert that qualified immunity bars Plaintiffs' § 1983 claims brought against them in their personal capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id.*

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

Until 2009, the Supreme Court required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct.

8

at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[3] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed,

---

[3] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v.*

*Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991).Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, this court is guided by the Eleventh Circuit's holding in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that the so-called heightened pleading rule no longer applies to civil rights cases in which a qualified immunity defense is asserted:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with Randall that those cases were effectively overturned by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .
>
> After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (emphasis added) (footnote omitted).

**D.     Plaintiffs' Failure To Oppose**

Plaintiffs' failure to file any opposition does not automatically mean that all

three motions are due to be granted. As explained by Judge Steele in *Branch Banking*

*and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, *1 (S.D. Ala. Jan.

16, 2013):

> As noted, Churchill and Howard elected not to be heard in
> response to BB & T's Amended Motion to Dismiss. Notwithstanding
> that omission, BB & T (as Rule 12(b)(6) movant) bears the initial
> burden of demonstrating that it is entitled to dismissal of the
> counterclaims. Churchill's and Howard's lack of response to the Rule
> 12(b)(6) Motion does not trigger the kneejerk granting of such Motion
> on an abandonment theory. *See Gailes v. Marengo County Sheriff's*
> *Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not
> treat a claim as abandoned merely because the plaintiff has not defended
> it in opposition to a motion to dismiss"). Rather, it remains BB & T's
> burden as movant to establish its entitlement to relief under Rule
> 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's
> Motion to Dismiss in accordance with the following legal standard: "the
> Court will review the merits of the [movant]'s position and, if it is
> clearly incorrect or inadequate to satisfy the [movant]'s initial burden,
> will deny the motion despite the [nonmovant]'s failure to respond. If,
> however, the [movant]'s presentation is adequate to satisfy its initial
> burden, the Court will not deny the motion based on arguments the
> [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, *1 (footnotes omitted).

**III.    Analysis**

**General Rulings**

The court has studied Defendants' motions and concludes that many of the arguments presented are well-taken, including specifically those premised upon Plaintiffs' failure to plead their claims against <u>each</u> defendant in a plausible and unambiguous manner. In particular, the overall vagueness of Plaintiffs' pleading, including a lack of clarity about which claims are asserted against which individual defendant(s), personally, officially, or both, makes an evaluation of qualified immunity and other asserted defenses impractical.

The court also finds the shotgun characteristics of Plaintiffs' first amended complaint to be unacceptable and determines that an order of repleader is appropriate. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.");[4] *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*,

_____

[4] *Davis* footnote 54 gives numerous examples of Eleventh Circuit anti-shotgun references and states in full:

> *See, e.g., United States ex el. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 n.1 (11th Cir. 2006); *Ambrosia Coal and Constr. Co. v. Morales*, 368 F.3d 1320, 1330 n.22 (11th Cir. 2004); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 nn.9-10 (11th Cir. 2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1128–34 (11th Cir. 2001); *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326-27 n.6 (11th Cir. 1998); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *Ibrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162 *passim* (11th Cir. 1997); *Anderson v. Dist. Bd.*

305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions.").

In repleading, Plaintiffs must study the *Davis* decision and the numerous cases cited therein and draft a much more definite and comprehensible pleading. The claims of <u>each plaintiff</u> against <u>each defendant</u> must be set forth in separately numbered counts and, with respect to <u>each</u> individual defendant and <u>each</u> separate claim, clarify whether Plaintiffs are suing such person individually only, officially only, or in both capacities. Additionally, Plaintiffs should refrain from incorporating allegations by reference, endeavor to streamline their claims and allegations, and reduce unnecessary duplication of their contentions. Further, Plaintiffs' restated pleading must include only <u>plausibly</u> stated claims and avoid lumping any causes of

---

*of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1567 (11th Cir. 1995); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1483-84 (11th Cir. 1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543-44 n.14 (11th Cir. 1986) (Tjoflat, J., dissenting). This list is just a teaser—since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

*Davis*, 516 F.3d at 979 n.54.

action together.[5]

For example, as it pertains to Plaintiffs' enumerated counts, Plaintiffs have only superficially alleged that Defendants have violated federal constitutional and state law without either breaking down each claim into its requisite elements or, much less, connecting those elements to facts, which Plaintiffs allege to plausibly support why that defendant or those defendants are liable to them under that specific claim. Such a state of disorganization not only violates *Twombly* and *Iqbal*, but also, if permitted to continue, constitutes an impediment to this court's <u>and</u> the parties' ability to justly deal with other stages of this case (assuming that, upon repleader, a cognizable claim ultimately remains), including discovery, summary judgment, and, if necessary, trial.

Additionally, in the absence of requiring a clearer pleading from Plaintiffs, the Eleventh Circuit may deem the record too ambiguous for it to decide the viability of a qualified immunity defense (or other issues) on appeal. *Cf. Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("We are unwilling to address and decide serious constitutional issues on the basis of this [shotgun] complaint."); *id.* ("In the past when

---

[5]   By way of further illustration, while Plaintiffs do not set forth any separate counts for conspiracy or the tort of outrage, they confusingly incorporate allegations of such misconduct into various portions of their complaint. (*See, e.g.*, Doc. 16 at 3 ¶ 23 ("conspired to allow defendant Moon to quietly retire from her position"); *id.* at 8 ¶ 70 ("Defendants conspired together to undertake this course of conduct believing that if they acted in a unified manner . . . ."); *id.* at 8-9 ¶¶ 72-76 (alleging outrageous conduct on the part of Defendants); *id.* at 11 ¶ 90 ("The conduct of defendants . . . was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency . . . .")).

faced with complaints like this one, we have vacated judgments and remanded with instructions that the district court require plaintiffs to replead their claims.").

### Count Specific Dismissals

While the court is giving Plaintiffs the opportunity to replead their complaint, such repleader shall not include Counts Two and Four. Concerning Count Two, Defendants are correct that Plaintiffs have not and cannot plausibly state a violation of the Fifth Amendment against them as such provision "only protects against federal government action and does not apply to municipalities" or municipal officials. (Doc. 26 at 7); *see also Public Utilities Commission of District of Columbia v. Pollak*, 343 U.S. 451, 461, 72 S. Ct. 813, 820, 96 L. Ed. 1068 (1952) (clarifying that Fifth Amendment "restrict[s] only the Federal Government and not private persons." (citing *Corrigan v. Buckley*, 271 U.S. 323, 330, 46 S. Ct. 521, 523, 70 L. Ed. 969 (1926))); *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here-the acts complained of were committed by state rather than federal officials.")). Accordingly, the Fifth Amendment portion of each motion is **GRANTED**, and Count Two of Plaintiffs' First Amended Complaint is **HEREBY DISMISSED WITH PREJUDICE**.

Count Four of Plaintiffs' amended complaint is due to be dismissed for lack of subject matter jurisdiction. More specifically, because there is no indication that

either plaintiff is still subject to further arrest for his or her failure to pay a fine or fee, both of them lack standing to pursue equitable or prospective injunctive relief against Defendants on behalf of themselves or other persons. Certainly, Plaintiffs have not alleged that they have "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675(1983)). Accordingly, the jurisdictional portion of each motion is **GRANTED**, and Count Four of Plaintiffs' First Amended Complaint is **HEREBY DISMISSED WITHOUT PREJUDICE**.

## IV.    Conclusion

Therefore, COT's Motion, the Individuals' Collective Motion, and Chief Reno's Motion are **GRANTED IN PART**, but such dismissal is subject to Plaintiffs' right to replead their claims (with the exception of any purportedly arising under Counts Two and Four) in a plausible manner that adequately addresses all of Defendants' arguments as well as the court's specific concerns as stated herein. COT's Motion, the Individuals' Collective Motion, and Chief Reno's Motion are **DENIED** to the extent that they seek a dismissal of this entire case with prejudice. Further, the remaining defenses raised in Defendants' motions are **TERMED** as

17

**MOOT**.[6]

Plaintiffs are **HEREBY CAUTIONED** that their failure to replead in a concise and meaningful manner may result in the dismissal of their entire case with or without prejudice. Finally, the deadline for Plaintiffs to replead their complaint is **on or before December 15, 2014**.

**DONE** and **ORDERED** this the 17th day of November, 2014.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6] Defendants have raised several defenses which the court has chosen not to address in this memorandum opinion and order. If, after repleader, any defendant still believes in good faith that a pleadings stage dismissal based upon qualified immunity or some other defense remains appropriate, then such defendant(s) may file a subsequent motion to dismiss.